MAY C. REED, EXECUTRIX OF THE LAST WILL AND TES-
TAMENT OF JOSEPH REED, DECEASED, RESPOND-
ENT, v. DIRECTOR-GENERAL OF RAILROADS, APPEL-
LANT.

Argued November 18, 1920—Decided February 28, 1921.

1. Plaintiff's decedent was employed as conductor of a freight train
running from Trenton to Sea Girt via Manasquan, and passing
Farmingdale en route; the track was single from Monmouth
Junction easterly through Farmingdale to Manasquan, where
there was a double track extending easterly to Sea Girt; there
was a switch at the junction of the two tracks protected by a
target showing green lights at night if a train was to continue
on the eastbound track, and red if it was to pass over to the
westbound track; there was also a block signal station at Farm-
ingdale, and here, if the track was clear for an eastbound move-
ment through to Sea Girt, green lights were set, but if the train
was to take the westbound track at Manasquan, special orders
were given. The night in question was dark with a heavy ground
fog, and there was a green light set at Farmingdale, indicating
a clear eastbound track, and no orders were given to take the
westbound track at Manasquan. Decedent was in a car with
a side door open, and, although scheduled to stop at Manasquan,
the train was approaching the switch at a speed of twenty-five
or thirty miles an hour, when the engineer first saw the red light
thereon only three car lengths ahead and too late to stop or slow
down before taking the open switch, which it did with a violent
lurch, running the length of the train of seventeen cars past the
switch and about one hundred feet beyond the station before it
could be stopped, and throwing decedent out of the car door to
his death. The train was carrying interstate freight, and suit
was brought under the Federal Employers' Liability act. *Held*,
that motions for a nonsuit and direction of a verdict for defend-
ant were both properly denied.
2. Under these facts it was not error to refuse to charge the fol-
lowing: "It was not negligence for the railroad to fail to warn
the engineer at Farmingdale that the switch at Manasquan was
open to admit a train to the westbound track."
3. A request to charge that "It was not negligence for the defend-
ant's engineer to fail to see the red signal on the switch at Man-
asquan when the accident happened," was properly refused be-
cause it assumes that it was not negligence for the engineer to
approach the switch under the circumstances, at such a rate of
speed in the fog, that he could not see the red light in time to
avoid running into the open switch. This question of negli-
gence was one of fact for the jury.

4. The trial court properly refused to charge that "the decedent assumed the risk of the negligence of his fellow-servants which you may find from the evidence were obvious or known to him, or should have been known to him," because there was no evidence that such negligence was obvious or known or should have been known to decedent, and, furthermore, it is settled that such negligence (arising solely and directly out of the negligent acts of fellow-servants) is not a risk assumed by an employe under the Federal Employers' Liability act.

5. Farmingdale was the beginning of the signal block in which the Manasquan station was located, and the signals maintained at Farmingdale, in the absence of special orders, governed the conduct of the train and indicated the condition of the track in the block and to that extent "guarded the switch" at Manasquan, hence questions concerning the condition of the signals at Farmingdale were material as bearing upon the question of the negligence of decedent's fellow-servants.

6. Where the negligence charged in the complaint was principally the improper guarding of the switch, and plaintiff was permitted at the trial over objection, to amend by charging as a further act of negligence that "the engineer in charge of the train ran it into the open switch with the red lights against him," and the defendant's attorney had in his opening address to the jury stated that the engineer would testify that "as he got within a few car lengths of the red lamp he saw it. The reason he didn't see it sooner was because of the condition of the weather. As soon as he saw it, he immediately applied the brakes." and the attorney then concluded by saying: "We contend that from these circumstances there can be no inference at all drawn of negligence." *Held,* that the defendant was not surprised nor prejudiced by the amendment.

7. An application to amend a pleading at the trial is addressed to the discretion of the court, and the decision thereon is not reviewable on appeal.

On appeal from the Supreme Court.

For the appellant, *Bourgeois & Coulomb.*

For the respondent, *James Mercer Davis.*

The opinion of the court was delivered by

ACKERSON, J.    Plaintiff's testate was employed as conductor of defendant's freight train making a night run from Trenton to Sea Girt by way of Farmingdale and Manasquan, both the deceased and the defendant being engaged at the

time in interstate commerce. The track was single from Monmouth Junction through Farmingdale until Manasquan was reached, and from there eastwardly to Sea Girt the railroad was double-tracked, with an eastbound and westbound track, and with a switch at the junction of the two tracks at Manasquan protected by a target carrying red and green lights. When a train was moving eastward towards Sea Girt and was to continue on the eastbound track, the switch light at Manasquan showed green; when it was to move from the eastbound to the westbound track, the light showed red. There was also a block signal station at Farmingdale, which was at the westerly end of the block in which the Manasquan station is located, with Sea Girt at the easterly end, and if the track was clear for an eastbound movement, green lights were set at this block signal station at Farmingdale, but if the train was to take the westbound track at the switch at Manasquan, or if, for any reason, the eastbound track was not clear, special orders were given at Farmingdale.

On the night in question it was very dark, with a heavy ground fog, making it difficult to see ahead, and when the train on which plaintiff's testate was riding reached Farmingdale, a green light was displayed, indicating that the eastbound track was clear for an eastward movement as far as Sea Girt, and no other orders whatever were given. The train proceeded on towards Manasquan, where it was to make a stop at the freight station to discharge freight, and while running at a speed of from twenty-five to thirty miles an hour, the engineer suddenly saw through the fog the red light of the switch at Manasquan only three car lengths ahead, and too late to stop or slow down the train before taking the switch, which it did with a violent lurch, running the full length of the train of seventeen cars past the switch before it could be stopped, and in fact running one hundred feet or more beyond the freight station where it was scheduled to make a stop. Plaintiff's testate was riding in one of the cars in which there was freight to be discharged at Manasquan, and had just gone to the side door of the car, which was open, evidently for the purpose of observing the location

of the train with reference to the depot, and when the train struck the open switch, the lurch threw him out of the door to the track and he was killed. This action was brought by his executrix in the Supreme Court under the Federal Employers' Liability act (*U. ,S. Comp. Stat.* 1916, §§ 8657, 8665), and the acts of negligence with which the defendant was charged in the complaint were that "the defendant carelessly and negligently maintained a certain switch without proper safeguards and unattended. * * * That no lights or other warning was given of the condition of said switch; that a reasonably safe place to work was not provided * * *; that the roadbed and appliances at the place complained of * * * were not kept in a reasonably safe condition." At the trial, at the Burlington Circuit, plaintiff .was permitted, over·objection, to. amend her complaint, alleging as a further ground of negligence the following: "As an act of negligence on the part of the railroad company, through its servants and agents, that the engineer in charge of this train ran into the open switch with the red lights against him." The above facts are undisputed, for the defendant rested without offering any evidence. At the close of plaintiff's case the defendant moved for a nonsuit, and then for the direction of a verdict in defendant's favor, both of which motions were denied, and the case was thereupon submitted to the jury, which returned a verdict for plaintiff, and from the judgment entered thereon defendant appeals.

The first point advanced for a reversal is the refusal of the trial court to grant defendant's motion for a nonsuit, which was based upon the following grounds, viz., that there was no negligence with which the defendant could be charged, either in the operation of the train or the maintenance of the switch and signal, which contributed to the death of plaintiff's testate; that the accident which caused his death was one which he was in law charged with having assumed the risk of as being incident to the natural and ordinary operation of railroad trains, and that as a matter of law the negligence of his fellow-servants obviously should have been known to him. From the facts above recited, however, it will ap-

pear that the deceased met his death either because of the failure of the defendant to give the engineer orders at Farmingdale that the switch at Manasquan was open, or by reason of the failure of the engineer to have his train under such control that, considering the foggy condition of the night, he could stop it or slow it down before he struck the switch in question. In either aspect of the case there was sufficient evidence to go to the jury on the question of the negligence of the fellow-servants of the deceased, which was the proximate cause of his death. The defendant, having assumed the duty of indicating to the train crew the condition of the track from Farmingdale to Sea Girt, and having indicated the track to be clear with no open switches, it was a proper question, under the facts above indicated, for the jury to determine whether the defendant had properly guarded the switch in question. This switch was close to the freight station where the train was to make a scheduled stop, and yet the train was traveling on a very dark night in a very thick fog at the rate of twenty-five or thirty miles an hour when the engineer observed the red switch light only three car lengths ahead and threw on the emergency brakes and put on the reverse, and yet the train ran its full length of seventeen cars into the switch and about one hundred feet beyond the freight station before it could be stopped. The question of the negligence of the engineer, under such circumstances, was clearly for the jury to determine. Nor can it be said that plaintiff's testate, who was riding inside of one of the cars, where he had a right to be, assumed the risk as incidental to the natural and ordinary operation of railroad trains, that proper orders would not be given at Farmingdale respecting the condition of the switch at Manasquan, nor that the engineer would run the train at such a rate of speed in the fog as not to have it under proper control on approaching the switch in question, and there was no evidence in the case that any negligence of any fellow-servant was obvious or should have been known to the decedent; and, furthermore, it has been settled in this state that the common law doctrine of assumption of risk, where it arises

solely and directly out of the negligent acts of fellow-servants, has been abolished by the Federal Employers' Liability act. *Swank* v. *Pennsylvania Railroad Co.,* 94 N. J. L. 546. The motion for a nonsuit was therefore properly refused, and for the same reasons the motion for the direction of a verdict was also properly refused.

It is next urged that the court erred in refusing to charge as requested the following: "It was not negligence for the railroad to fail to warn the engineer at Farmingdale that the switch at Manasquan was open to admit a train to the westbound track." The argument in support of this proposition is that no negligence can be inferred from the defendant's failure to give an order at Farmingdale that the switch at Manasquan was open so as to carry the train on to the westbound track, but this has no merit because the uncontradicted testimony was to the effect that it was a rule or custom of the road that when a green light was displayed at Farmingdale, and no special orders given, it was an indication that there were no trains in the block and no open switches, and that the train might proceed at its specified speed, and would not have to reduce its speed on approaching every switch in anticipation that it might have been turned or tampered with after the clear signal was given. The question of negligence, under the circumstances, therefore, was one of fact for the jury, and it was not error to refuse to charge as requested.

The next point urged is, that it was error to refuse to charge as follows: "It was not negligence for the defendant's engineer to fail to see the red signal on the switch target at Manasquan when the accident happened." Defendant's contention is, that it was difficult for the engineer to see the red light by reason of the fog, and that as soon as he saw it he stopped his train as quickly as possible and was not therefore negligent. We do not think this argument is sound, for it assumes that it was not negligence for the engineer to approach the switch, which was adjacent to the freight station where the train was scheduled to stop, at such a rate of speed in the fog that he could not see the red light in time to avoid running into the open switch. The question of negligence, under the circumstances, was for the jury to determine.

The next point urged for a reversal is the refusal of the trial court to charge as requested that: "The decedent assumed the risk of the negligence of his fellow-servants which you may find from the evidence were obvious or known to him or should have been known to him." This assumes that the engineer knew or should have known from the evidence that the switch was open and that such knowledge was chargeable to the decedent. We think this request to charge was properly refused because there was no evidence that the negligence of any fellow-servant was obvious or known or should have been known to the decedent, and we held, in *Anderson v. Director General of Railroads,* 94 *N. J. L.* 421, and *Swank v. Pennsylvania Railroad Co., supra,* that such negligence could not be considered as a risk assumed by the employe.

It is next contended that the trial court erred in permitting certain questions to be asked and answered, over defendant's objection, concerning the condition of the signals at Farmingdale. The argument is based upon the claim that the negligence charged in the complaint was failure to guard the switch at Manasquan, and that the conditions at Farmingdale had no bearing on the conditions as they existed at Manasquan. The testimony shows, however, that Farmingdale was the beginning of the signal block which ended at Sea Girt and in which the Manasquan station was located, and that the signals maintained at Farmingdale, in the absence of special orders, governed the conduct of the train and indicated the condition of the track from that station all the way through to Sea Girt, and to that extent "guarded the switch" at Manasquan, hence, the questions concerning the conditions of the signals at Farmingdale were material as bearing upon the question of the negligence of the decedent's fellow-servants in charge of this block and of the signal station at Farmingdale and of the engineer of the train also.

The last assignment of error is, that the trial court erred in permitting the plaintiff to amend her complaint at the trial, over defendant's objection, by charging as a further act of negligence on the part of the railroad company that the engineer in charge of the train ran into the open switch with

the red lights against him. It is argued that the amendment entirely changed the character of the negligence complained of from negligence charging the improper guarding of the switch to negligence charging the defendant's engineer with failure to properly observe the signal at the switch, and, therefore, could not be made without giving the defendant an opportunity to meet such a situation. The defendant, however, cannot successfully claim surprise, because, in his opening to the jury, defendant's attorney stated that the engineer would testify that "as he got within a few car lengths of this red lamp he saw it. The reason he didn't see it sooner was because of the condition of the weather. As soon as he saw the red lamp, he immediately applied his brakes to bring his train to the proper standstill, knowing that he was going on to the track where he didn't suppose and really knew he had no right to be;" and then continued as follows: "We contend that from these circumstances there can be no inference at all drawn of negligence." Clearly, the defendant was prepared for and expected the engineer to so testify, which he later did, without objection, and before the motion to amend as above indicated was made, and, therefore, defendant was neither surprised nor prejudiced by the amendment. An application to amend a pleading at the trial is addressed to the discretion of the court, and the decision thereon is not reviewable on appeal. *Bruch* v. *Carter*, 32 *N. J. L.* 554; *Lutlopp* v. *Heckman*, 70 *Id.* 272. The subject-matter of this amendment was such as the court could properly make under sections 23 and 24 of the supplement to our Practice act. *Pamph. L.* 1912, *p.* 381.

Finding no error in the record the judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 16.

*For reversal*—None.